UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DANIEL D.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. C24-0265-SKV

ORDER REVERSING THE COMMISSIONER'S DECISION

Plaintiff seeks review of the denial of their application for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB).[1] Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff was born in 1990, has a high school education, and previously worked as a customer service representative, stock clerk, cashier, and sales clerk. AR 29-30. Plaintiff was last gainfully employed in 2019. AR 281.

---

[1] Plaintiff's pronouns are they/them. Dkt. 9 at n.1.

ORDER REVERSING THE COMMISSIONER'S
DECISION - 1

In August 2020, Plaintiff applied for benefits, alleging disability as of June 2019. AR 275-76. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. AR 70-167. After the ALJ conducted a hearing in December 2022, the ALJ issued a decision finding Plaintiff not disabled. AR 14-37.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ found:

**Step one**: Plaintiff has not engaged in substantial gainful activity since June 2019.

**Step two**: Plaintiff has the following severe impairments: posttraumatic stress disorder (PTSD); depressive disorder, anxiety disorder, personality disorder, obesity, and left shoulder condition.

**Step three**: These impairments do not meet or equal the requirements of a listed impairment.[3]

**Residual Functional Capacity (RFC)**: Plaintiff can perform light work except Plaintiff is able to understand, remember, and carry out simple instructions and tasks; use judgment to make simple work-related decisions; cannot perform work requiring a specific production rate (such as assembly line work) or work that requires hourly quotas; can have no contact with the public; is capable of working in proximity to, but not in coordination with, coworkers; can have occasional contact with supervisors; can perform no overhead reaching with the non-dominant left upper extremity; can frequently reach at or below shoulder level with the non-dominant left upper extremity; can occasionally stoop, crouch, and climb ramps and stairs; cannot crawl, kneel, or climb ropes, ladders, or scaffolds; and cannot work at heights or in proximity to hazardous conditions.

**Step four**: Plaintiff cannot perform past relevant work.

**Step five**: As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR 17, 19, 22, 29-30.

---

[2] 20 C.F.R. §§ 404.1520, 416.920.
[3] 20 C.F.R. Part 404, Subpart P., App. 1.

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision.  AR 1-6.  Plaintiff appealed the final decision of the Commissioner to this Court.  Dkt. 4.  The parties consented to proceed before the undersigned Magistrate Judge.  Dkt. 2.

## LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on harmful legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination."  *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted).  The Court looks to "the record as a whole to determine whether the error alters the outcome of the case."  *Id*.

Substantial evidence is "more than a mere scintilla.  It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for evaluating symptom testimony, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id.*

**DISCUSSION**

Plaintiff argues the ALJ erred by misevaluating their testimony and the medical opinion evidence, resulting in an erroneous RFC assessment. Dkt. 9. The Commissioner argues the ALJ's decision is free of harmful legal error, supported by substantial evidence, and should be affirmed. Dkt. 11.

A.   **The ALJ Erred in Evaluating Medical Opinion Evidence**

Under the regulations applicable in this case, the ALJ is required to articulate the persuasiveness of each medical opinion, specifically in terms of its supportability and consistency with the record. *See* 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c). These findings require substantial evidentiary support. *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

In August 2021, Dr. Lucy Carstens opined that Plaintiff's mental disorders severely impaired their ability to complete a typical workday without psychological disruptions; identified marked limitations in Plaintiff's ability to adapt to routine workplace changes, communicate effectively, maintain appropriate behavior, and independently set realistic goals; and concluded that Plaintiff's overall impairment was marked. AR 816-17. Dr. Holly Petaja then reviewed Plaintiff's medical records and concurred with Dr. Carstens' assessment. AR 827-30.

The ALJ found these opinions unpersuasive, citing lack of support, the check-box format of the reports, and inconsistency with Plaintiff's "generally modest" mental status findings. AR 29. The ALJ also pointed to "potential exaggeration" in Plaintiff's Personality Assessment Inventory (PAI) responses as a reason for discounting the doctors' opinions. AR 29. Plaintiff asserts that the ALJ's findings are not supported by substantial evidence. Dkt. 9 at 7-14. The Court agrees for the following three reasons.

First, the ALJ erred by rejecting the doctors' opinions due to the check-box format. The Ninth Circuit has made it clear that format alone is not a valid reason for rejecting an opinion. *See Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017). The ALJ's finding that the opinions lacked support is also contradicted by the record. Dr. Carstens provided a detailed discussion of Plaintiff's treatment history, suicidal ideation, daily activities, clinical findings, and mental status. She also evaluated the results of Plaintiff's PAI. AR 814-26. An ALJ may not reject evidence based on an inaccurate portrayal of the record. *Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (ALJ's decision unsupported by substantial evidence where "paraphrasing of record material is not entirely accurate regarding the content or tone of the record.").

Second, the ALJ erred in concluding that the doctors' opinions were overly reliant on Plaintiff's subjective reports. The Ninth Circuit has consistently held that mental health professionals may base their opinions, in part, on patients' self-reports, and that this is inherent to psychiatry. *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017); *Ferrando v. Comm'r of Soc. Sec. Admin.*, 449 Fed. Appx. 610, 612 n.2 (9th Cir. 2011) ("Mental health professionals frequently rely on the combination of their observations and the patient's reports of symptoms."). Here, the ALJ criticized the doctors' reliance on Plaintiff's subjective reports, citing potential exaggeration in the PAI. However, Dr. Carstens acknowledged the possibility of overrepresentation in the clinical scales but nonetheless concluded that Plaintiff's profile reflected significant distress and severe functional impairments. AR 819. Contrary to the ALJ's assertion, Dr. Carstens statement does not indicate any credibility concerns.

Third, the ALJ improperly rejected the doctors' opinions based on Plaintiff's generally normal mental status findings. The ALJ pointed to Plaintiff's cooperative attitude, logical thought process, and ability to spell words backward and perform serial seven subtractions as

evidence undermining the doctors' opinions.  AR 29.  However, as the Ninth Circuit has emphasized, isolated normal findings must be viewed in the context of the overall diagnostic picture.  *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).  Dr. Carstens specifically noted that Plaintiff's impairments exhibited a level of severity uncommon in clinical settings and were triggered by situations lacking unconditional acceptance.  AR 820.  The ALJ's reliance on normal findings in clinical settings where Plaintiff was presumably free of external stressors does not undermine Dr. Carstens' assessment.  *See Reddick*, 157 F.3d at 725 ("The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct.").

In sum, the ALJ mischaracterized the support underlying the doctors' opinions, wrongly assumed that Plaintiff exaggerated their symptoms, and ignored the context of Dr. Carstens' findings.  Given that the doctors' opinions suggest limitations that would prevent Plaintiff from maintaining full-time employment, the ALJ's error was not harmless.  AR 66-68.

**B.    The ALJ Erred in Evaluating Plaintiff's Testimony**

The ALJ found Plaintiff's testimony unpersuasive, citing inconsistencies with the record.  AR 23-28.  Absent evidence of malingering, an ALJ is required to provide "clear and convincing reasons" to discount a claimant's testimony.  *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).  This requires the ALJ to specify which parts of the testimony are not credible and what evidence contradicts them.  *Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017).  Although the ALJ is not obligated to accept every claim or analyze testimony line by line, the ALJ's rationale must be clear enough "that it has the power to convince."  *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022); *see also Ahearn v. Saul*, 988 F.3d 1111, 1116 (9th Cir. 2021); *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020).

1. *Mental Symptom Testimony*

Plaintiff testified to experiencing frequent panic attacks, vivid nightmares, hallucinations, multiple personalities, and extreme fatigue. They struggled with focus, memory, and following instructions, relying on alarms to complete daily tasks. Due to fear and anxiety, they avoided public places and limited their social interactions to online chat rooms. They also reported significant medication side effects, including insomnia and suicidal ideation. AR 44-59, 304-10, 342-49.

Plaintiff contends the ALJ erred by relying on normal mental status findings to discount their testimony. Dkt. 9 at 16-17. The ALJ concluded that Plaintiff's testimony was inconsistent with their generally normal mental status examinations. AR 23-28. However, as discussed earlier, the ALJ's portrayal of the record is not supported by substantial evidence. Occasionally normal mental findings do not undermine Plaintiff's testimony about symptoms that wax-and-wane and are triggered by specific situations.

The ALJ also rejected Plaintiff's testimony based on the improvement of their mental health with treatment and medication, despite situational stressors. Dkt. 9 at 17. The ALJ relied on a treatment note indicating that Plaintiff was a good candidate for gender-affirming surgery due to their "overall stable physical and mental health." AR 27. However, this note referred to Plaintiff's stability regarding their desire for surgery, not their general mental health. AR 45-46, 1423. The ALJ cannot reject evidence by inaccurately representing the record. *See Reddick*, 157 F.3d at 722-23. Here, the record reflects that even with reduced stressors, Plaintiff continued to experience symptoms of PTSD, anxiety, and depression. AR 44-59, 304-10, 342-49, 979-1452.

Next, the ALJ found Plaintiff's testimony inconsistent with their daily activities, noting that Plaintiff could manage self-care, perform household chores, handle finances independently,

was able to drive, and reported doing well at an arcade.  AR 27.  Plaintiff argues that these activities are not inconsistent with their testimony.  Dkt. 9 at 6, 17-18.  The Court agrees.

Contrary to the ALJ's findings, the record shows that Plaintiff had limited income, never learned to balance a checkbook, and reported cognitive difficulties in managing finances.  AR 344.  The Ninth Circuit has consistently warned ALJ's to exercise caution when using daily activities to assess disability claims, particularly when those activities are performed with pain or other impairments.  *See*, *e.g.*, *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).  While the ALJ concluded that Plaintiff was able to drive, the ALJ ignored that Plaintiff no longer drove because they experienced panic attacks in the car.  AR 305.  Similarly, Plaintiff's success at the arcade was due to the low number of people present, not because they could tolerate crowded environments.  AR 1346.  The ALJ did not explain how these limited activities were inconsistent with Plaintiff's testimony or reflected an ability to perform work-related tasks.  *See Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017).  Thus, the ALJ's evaluation of Plaintiff's daily activities is not supported by substantial evidence.

        2.    *Physical Symptom Testimony*

Plaintiff also challenges the RFC assessment, arguing that the ALJ failed to provide clear and convincing reasons for limiting overhead reaching while allowing frequent reaching at or below shoulder level.  Dkt. 9 at 5.  This distinction is critical because the Vocational Expert testified that if Plaintiff were limited to occasional reaching, they would be unable to work.  AR 66-68.  The RFC is the most a claimant can do despite limitations, based on all relevant evidence in the record.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  An RFC must include all of the functional limitations that are supported by the record.  *See Valentine v. Comm'r of Soc. Sec.*

*Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The Commissioner bears responsibility for "translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (internal citation omitted).

Plaintiff testified that chronic pain, impaired dexterity, and loss of fine hand control limited their ability to sleep, perform daily activities such as bathing and dressing, and participate in hobbies like drawing and building Legos. AR 57-58, 304-09, 342-45. The ALJ acknowledged that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms" and did not find Plaintiff to be malingering. Despite this, the ALJ discounted Plaintiff's testimony, noting that the limitations were already "accounted for in the residual functional capacity assessed above." AR 22-24. The ALJ's approach here—starting with the RFC and retroactively justifying it—is "inconsistent with the Social Security Act and should not be used in disability decisions." *Laborin*, 867 F.3d at 1153. An ALJ must consider a claimant's testimony when formulating the RFC. *Id.* at 1154; *see also Trevizo v. Berryhill*, 862 F.3d 987, 1000 n.6 (9th Cir. 2017).

The ALJ also failed to explain why Plaintiff could not perform any overhead reaching but could frequently reach at or below shoulder level. Instead, the ALJ generally dismissed Plaintiff's allegations of severe pain by citing a lack of objective evidence. The ALJ referenced several examinations noting persistent pain, decreased range of motion, and muscle atrophy,[4] while also citing records showing normal muscle strength, tone, stability, and range of motion during certain appointments.[5] AR 24-25. However, this evidence is consistent with Plaintiff's

---

[4] AR 612, 622, 642, 648, 744-45, 762, 986-88, 1394-95 (pain, tender points, decreased range of motion).

[5] AR 617, 630-33, 651-56, 1242, 1283, 1361 (no significant examination findings).

ORDER REVERSING THE COMMISSIONER'S
DECISION - 9

testimony of chronic pain.  *Beneke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("Sheer disbelief is no substitute for substantial evidence.").

Moreover, the ALJ erroneously concluded that Plaintiff's activities were "not inconsistent with the residual functional capacity set forth above." AR 27-28.  While daily activities can be used to reject symptom testimony, a claimant "does not need to be utterly incapacitated to be disabled." *Benecke*, 379 F.3d at 594.  The ALJ cited Plaintiff's reports of managing self-care, performing light household chores, preparing simple meals, and washing dishes.  AR 27-28.  However, the ALJ did not acknowledge that Plaintiff also reported being able to complete only a few tasks each day and needing frequent breaks, which is consistent with their testimony.  AR 304-09, 342-45.  Considering this, the ALJ failed to meet the high standard required to reject Plaintiff's symptom testimony.

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).  On remand, the ALJ shall reevaluate Plaintiff's testimony and the medical opinions from Drs. Carstens and Petaja, develop the record and redetermine RFC as needed, and proceed to the remaining steps of the disability determination process as appropriate.

Dated this 23rd day of September, 2024.

*[signature]*

S. KATE VAUGHAN
United States Magistrate Judge